976 P.2d 1098 (1999)
1999 OK CIV APP 32
In the Matter of E.M., an alleged deprived child.
James Perkins, natural father, Appellant,
v.
State of Oklahoma ex rel. Department of Human Services, Appellee.
No. 91,630.
Court of Civil Appeals of Oklahoma, Division No. 4.
February 16, 1999.
Jeff McGrew, Tulsa, Oklahoma, For Appellant.
Charles L. Richardson, District Attorney, C. Kevin Morrison, Assistant District Attorney, Tulsa, Oklahoma, For Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 4.

*1099 OPINION

GOODMAN, P.J.
¶ 1 This is an appeal from an order terminating an incarcerated natural father's parental rights for alleged failure to protect his child from harm. Based upon our review of the record and applicable law, we reverse and remand.

I
¶ 2 On June 6, 1994, the State of Oklahoma, ex rel. the Department of Human Services, filed a petition informing the natural parents of one-and-half-year-old E.M. of the State's intent to seek termination of their parental rights based upon the mother's "inappropriate parenting" and her inability to protect the child from physical abuse while in her care. The petition alleged the father "has failed to provide [sic] or protect his child." Finally, the petition "notified" the parents "of statutory authority to request that parental rights be terminated in the event that conditions described herein have not been corrected within three months after adjudication of said child pursuant to this petition." At the time, the father was incarcerated in the John Lilley Correctional Facility in Boley, Oklahoma. E.M. was placed in emergency custody of the Department of Human Services.
¶ 3 At an adjudicatory hearing August 17, 1994, the father stipulated to the allegations of the petition and the trial court declared E.M. a deprived child. The trial court held a dispositional hearing September 28, 1994, in which it imposed the following standards of conduct on the father:
[1] pay [monthly] child support in the amount of $5.00 .... to be reexamined upon the release of [the father].
[2] put forth his best effort to obtain and maintain employment or a source of income adequate to meet the needs of said child. This standard commences immediately upon the release of [the father].
[3] enroll in, actively participate in and successfully complete a parenting skills program ... and provide verification of progress and completion to the social worker and the Court. [The father] is to take advantage of any parenting skills offered through the facility in which he is housed. If no program is available in the Department of Corrections facility, [the father] is to immediately begin this standard upon his release.
[4] provide a safe stable home ... immediately upon his release.
[5] actively participate in, attend regularly and successfully complete therapy to address the physical abuse of said child [and] take advantage of any program available in the facility in which he is housed that would satisfy this standard. If no program exists in the facility, [the father] is to immediately begin this standard upon his release.
[6] obtain an assessment for drug and alcohol abuse with an accredited therapist [taking] advantage of any drug and alcohol program available in the DOC facility in which he is housed. If such a program is not available in the DOC facility, [the father] is to begin this standard immediately upon release.
[7] visit with the child at least once per month when released from the Department of Corrections.
[8] contact the social worker at least one time per month pending his release.
[9] [The father] is responsible for completing the recommended court ordered standards with the understanding that his parental rights could be terminated for failure to comply with court ordered standards within ninety (90) days.
*1100 ¶ 4 The trial court held a hearing March 20, 1998, on the State's Motion to Terminate the father's parental rights.[1] In an order filed June 26, 1998, the court granted the motion based upon a finding that "the State of Oklahoma has shown by clear and convincing evidence that the parental rights of [the father] should be terminated, and that it is in the best interest of the child that parental rights be terminated."[2] The father appeals.

II
¶ 5 The two propositions of error raised by the father need not be addressed due to an unraised, reversible error of a fundamental nature  failure of the termination to be supported by the law.
¶ 6 The Petition does not specifically inform the father of the statutory grounds under which termination of his parental rights are being sought. Instead, he is simply "notified of statutory authority to request that parental rights be terminated in the event that conditions described herein have not been corrected within three months...." The sole condition or allegation pertaining to the father is that he "has failed to provide [sic] or protect his child."
¶ 7 It is undisputed that at the time E.M. was born, and during the time E.M. was abused, the father was a non-custodial parent incarcerated by the Department of Corrections. It is thus clear from the allegations of the June 6, 1994, Petition and the evidence presented at the March 20, 1998, trial that three statutory provisions exist upon which termination may have been predicated, 10 O.S. Supp. 1993, § 1130(A)(3), (4), and (7)(c), which require that termination of parental rights be based upon trial court findings that:
[3.] a. the child is deprived . . . and
b. such condition is caused by or contributed to by acts or omissions of the parent, and
c. termination of parental rights is in the best interests of the child, and
d. the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition.. . . .
4. [A] parent who does not have custody of the child has willfully failed to contribute to the support of the child . . . consistent with the parent's means and earning capacity; provided, that the incarceration of a parent shall not prevent termination of parental rights under this section. . . .
. . . .
7. [c]. the parent whose rights are sought to be terminated has been sentenced to a period of incarceration of not less than ten (10) years. . . .[3]
¶ 8 At trial, evidence established the father's extensive history of alternating periods of incarceration and parole, including disciplinary violations while in DOC custody resulting in loss of privileges and time earned; his failure to initiate contact with DHS regarding the well-being of his daughter; his failure to pay court-ordered child support while incarcerated, which was one of the court-ordered standards of conduct, his failure to avail himself of certain court-ordered services offered in DOC facilities, and his inability to participate in other court-ordered services because they were not offered while he was in custody. The father also testified he retained parental rights to another daughter he fathered by the natural mother; he wanted the sisters to be together in the custody of his mother until he was released from DOC custody, which he said would be in less than 2 years; he was vaguely aware of the consequences of E.M.'s severe reactive attachment disorder; he was never informed the court-ordered standards of conduct were to be completed during or prior to his release from custody, and he attended weekly meetings of Alcoholics Anonymous.
¶ 9 A DHS child welfare specialist in the permanency planning unit testified she receives *1101 "cases from treatment workers after parental rights have been terminated and find adoptive homes or some other permanent plan for the children" and had begun working with E.M. in March 1997. When the specialist "first met [E.M.] she had many special needs. She had a lot of behavioral problems and some attachment issues, which those were addressed in therapeutic foster care [a]nd she's made tremendous progress in those areas." The specialist testified a suitable adoptive home for E.M. had been identified but denied any knowledge of possible placement of E.M. with the paternal grandmother. However, the trial court verified the father's testimony that after the Petition had been filed, he requested the court in a letter to consider his mother as "relative placement" for E.M.[4]
¶ 10 The DHS case worker responsible for the father's treatment plan which implemented the court-ordered standards of conduct testified that because the father was in prison, she did not have time to visit him. Instead, she said she relied upon the trial court's instruction that he contact the case worker, which he did not do.
¶ 11 At the conclusion of the evidence, the trial court stated, in relevant part::
I don't expect a dispositional order to be completed in the Department of Corrections. It's impossible in most cases, okay?
. . . .
What I do expect are letters. What I do expect is an interest.... How is my child doing? What can I do? How can I do it?. . . It is not merely doing the parenting classes. It is not merely doing the AA. It's not merely doing the visitations. It's not doing the standards that counts and what this Court is required to look at. It is the interest and the efforts to become the adult parent that was not there at the time this child was taken into custody, okay? For all intent and purpose, you were still gone for four years. And it's not because you were in custody, it was because there was no communication.... She wasn't toilet trained. She was rubbing her feces all over the wall. She had tremendous aggression and behavior. She was a child who was very emotionally damaged. She's just now coming out of it. Those are the conditions I needed to see changed, was the interest of the parent to be there.
....
I can't wait another two or three years on this child to see what you do. That's a lifetime to her.
....
My job is twofold. Has anything changed since 1994 in June? The Court would have to say no, it hasn't. Is it in your daughter's best interest that she been [sic] allowed to pursue the next chapter of her life to be adopted? I would say yes. Yes, the motion is sustained. (Emphasis added.)
¶ 12 In its termination order, however, the trial court did not specify the authority upon which it relied, but found simply that "the State of Oklahoma has shown by clear and convincing evidence that the parental rights of [the father] should be terminated, and that it is in the best interest of the child that parental rights be terminated." Neither finding is legally consistent with, or supportive of, any of the statutorily mandated predicatory findings recited above. See In re L.S., 1990 OK CIV APP 94, ¶ 16, 805 P.2d 120, 123-4. Likewise, the grounds announced by the trial court from the bench are alien to our statutory scheme for termination of parental rights.
¶ 13 Termination of parental rights can be sanctioned only upon a finding which *1102 strictly comports with a specific statutory basis for the termination. In the absence of a clear statement by the trial court as to what that authority was, and what conditions which led to the deprived adjudication the parent has failed to correct, "we are effectively precluded from determining if the trial court acted properly in terminating ... parental rights." In re B.M.O., 1992 OK CIV APP 89, ¶ 10, 838 P.2d 38, 40.

III
¶ 14 The order terminating the father's parental rights is reversed and the matter is remanded to the trial court with directions to afford the State an opportunity to proceed in accordance with the law consistent with this opinion.
¶ 15 REVERSED AND REMANDED.
RAPP, J., and TAYLOR, J., concur.
NOTES
[1] The Motion to Terminate was not designated as part of the appellate record.
[2] The trial court had terminated the parental rights of E.M.'s natural mother March 26, 1996.
[3] At the time of the March 20, 1998, hearing these provisions had been recodified as 10 O.S. Supp.1997, §§ 7006-1.1(A)(3), (5), and (8)(c).
[4] Title 10 O.S. Supp. 1997, § 21.1(A), states in relevant part:

A. Custody should be awarded or a guardian appointed in the following order of preference according to the best interest of the child to:
1. A parent or to both parents jointly....
2. A grandparent;
3. A person who was indicated by the wishes of a deceased parent;
4. A relative of either parent;
5. The person in whose home the child has been living in a wholesome and stable environment; or
6. Any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.