2012 OK CIV APP 65

**In the Matter of R.A., W.A., Z.A. and A.A., Deprived Children.**

**State of Oklahoma, Petitioner/Appellee,**

v.

**Keisha Albert, Respondent/Appellant.**

**No. 109,952.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 1, 2012.

Mary Walters, Assistant District Attorney, Tulsa, OK, for Petitioner/Appellee.

Renee Waisner, Assistant Public Defender, Tulsa, OK, for Minor Children, Appellees.

George Nelson, Tulsa, OK, for Respondent/Appellant.

BAY MITCHELL, Judge.

¶1 Appellant Keisha Albert (Mother) appeals an Order terminating her parental rights to her minor children, R.A., W.A., Z.A. and A.A., upon a unanimous jury verdict finding Mother failed to correct the conditions leading to the adjudication of the children as deprived pursuant to 10A O.S. Supp. 2009 § 1–4–904(B)(5) and (14).[1]

¶2 In May 2010, the State of Oklahoma took Mother's three children, R.A. (9 years old), W.A. (6 years old) and Z.A. (2 years old), into protective custody because the children were found alone and unattended. Mother claimed she had left the children with her boyfriend while she admittedly was away using drugs. At that time, Mother was pregnant with A.A. Mother voluntarily entered an inpatient substance abuse treatment facility known as The Oaks Rehab Center.

¶3 The State filed a Petition seeking to declare R.A., W.A. and Z.A. deprived and neglected in May 2010. In June 2010, Mother stipulated to an interlineated Petition, and R.A., W.A. and Z.A. were adjudicated deprived based upon lack of supervision, neglect, exposure to substance abuse, and failure to provide a safe and stable home by Mother.[2] The trial court referred her case to drug court. Shortly thereafter, Mother gave birth to A.A., while an inpatient at The Oaks. Mother was allowed to retain custody of A.A. while she was receiving treatment at The Oaks.

¶4 In July 2010, Mother agreed to an Individualized Service Plan (ISP) identifying the conditions which required correcting:

Ms. Albert has endangered [W.A., R.A. and Z.A.] by exposing them to substance abuse and high-risk behaviors. Ms. Albert has neglected her children and not provided them with a nurturing home environment to support their physical, educational and psychological well-being. Ms. Albert has not provided her children with a stable, consistent and safe home environment.

Mother's ISP specifically identified risk factors and actions she was required to take to correct these conditions, including:

Substance Abuse—continue treatment for her substance abuse and follow all recommendations;

Financial Security—obtain/maintain a legal source of income for a minimum of six months;

Neglect–Shelter—obtain/maintain adequate housing for a minimum of six months;

Visit her children; contact her case worker regularly;

Participate and complete the requirements of all services on her plan;

Attend and participate in all hearings and reviews; and

Pay child support as ordered by the court.

¶5 Mother left The Oaks against medical advice in September 2010. A.A. was then taken into protective custody. Mother began receiving outpatient treatment and therapy while waiting to be placed in a different inpatient treatment facility. The State filed a Petition seeking to declare A.A. deprived and neglected in September 2010. The Petition regarding A.A. specifically recognized Mother had been diagnosed as bipolar.

¶6 A new ISP was then entered to include A.A. The ISP did not include any changes to the conditions which Mother needed to correct. The new ISP included additional risk

---

1. Pursuant to Supreme Court Rule 1.27(d), the Oklahoma Supreme Court ordered the consolidation of the appeals in Case No. 109,952 (In the Matter of R.A., W.A., and Z.A.) and Case No. 109,953 (In the Matter of A.A.). The two appeals were consolidated under the surviving appellate case No. 109,952. Regardless of the style of Mother's Brief–in–Chief, Mother's appeal clearly applies to all four children R.A., W.A., Z.A. and A.A.

2. An Amended Petition was filed on July 27, 2010 but was not designated in the record on appeal. The Amended Petition was included in exhibits admitted at trial. The conditions for adjudicating the children deprived did not change in the Amended Petition.

factors and actions Mother was required to take and specifically included a section on mental health. The Mental Health section of the ISP required Mother to:

> Obtain, attend and complete individual counseling to address her substance abuse;
>
> Complete all testing recommended by the service provider; which may include a psychological evaluation; and
>
> Follow all recommendations as a result of any such testing.

The updated ISP also required Mother to participate in parenting classes.

¶ 7 In October 2010, Mother stipulated to the Petition, and A.A. was adjudicated deprived based upon neglect, exposure to substance abuse, failure to provide a safe and stable home, and risk of harm to the child. Mother was then ordered to obtain a psychological evaluation.[3] Mother admittedly relapsed in October 2010 and was subsequently discharged from drug court in November 2010. In January 2011, the State filed a motion to terminate Mother's parental rights to R.A., W.A. and Z.A. pursuant to 10A O.S. Supp.2009 § 1–4–904(B)(5). In February 2011, the State filed a motion to terminate Mother's parental rights to A.A. pursuant to 10A O.S. Supp.2009 § 1–4–904(B)(5)and (14).[4]

¶ 8 A consolidated jury trial was conducted wherein the State sought to terminate Mother's parental rights for failure to correct the conditions that caused R.A., W.A., Z.A. and A.A. to become deprived. After three days of testimony, the jury returned unanimous verdicts to terminate Mother's parental rights to the four children.

¶ 9 Mother instituted the present appeal arguing three separate propositions of error. First, Mother was denied constitutional due process because her treatment plans failed to address her mental health issues. Second, the jury's verdict and the trial court's order failed to make findings of and address the statutory requirements that: (1) Mother was given at least three months to correct conditions and (2) termination was in the children's best interests. Mother also argued the jury instructions were misleading. Third, Mother claimed the verdict forms were misleading and prejudicial.

¶ 10 In termination proceedings, the burden is on the State to prove by clear and convincing evidence the statutory requirements for termination, including that termination is in the best interests of the children. *Matter of C.G.* 1981 OK 131, ¶ 17, 637 P.2d 66; *Matter of S.B.C.*, 2002 OK 83, ¶ 5, 64 P.3d 1080, 1082; *Matter of A.L.F.*, 2010 OK 59, ¶ 6, 237 P.3d 217, 219. In reviewing an order terminating parental rights, the appellate court must determine whether the factual findings of the trial court are supported by the requisite clear and convincing evidence. *Matter of S.B.C.*, ¶¶ 6–7, 64 P.3d at 1082. "Clear and convincing evidence is that measure of proof that 'will produce in the mind of the trier of fact a *firm belief or conviction as to the truth* of the allegation sought to be established.'" *Matter of S.B.C.* at ¶ 5, note 9.

¶ 11 In consideration of Mother's second and third propositions of error, a split of authority from the Oklahoma Court of Civil Appeals exists concerning the specifics that

---

3. The psychological evaluation performed on October 20, 2010 at the direction of the drug court concluded Mother suffered from: "Major Depressive Disorder, Recurrent, Moderate; Posttraumatic Stress Disorder, Chronic; Attention–Deficit Hyperactivity Disorder, Combined Type; and Specific Phobia, Animal Type. She also meets criteria for Cocaine Dependence, Cannabis Dependence in early partial remission, and Opioid Abuse. She also meets criteria for Antisocial Personality Disorder."

4. 10A O.S. Supp.2009 § 1–4–904(B)(5) and (14) provide:
   (B) The court may terminate the rights of a parent to a child based upon the following legal grounds:

5. A finding that:
   a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
   b. the parent has been given at least three (3) months to correct the condition;
   . . . .
   14. A finding that:
   a. the condition that led to the deprived adjudication has been the subject of a previous deprived adjudication of this child or a sibling of this child, and
   b. the parent has been given an opportunity to correct the conditions which led to the determination of the initial deprived child.

must be addressed by the jury and/or the trial court through jury instructions, verdict forms and the order of termination. The Divisions of this Court, including this Division, have published conflicting opinions on the required findings. The Oklahoma Supreme Court has not specifically addressed this issue.

¶ 12 In *Matter of L.S.*, 1990 OK CIV APP 94, 805 P.2d 120, Division 2 of this Court reversed an order terminating parental rights on an unraised, fundamental error in the trial court's failure to include in its termination order "any reference to the statutory grounds for the terminations or any findings satisfying the statutory requirements." *Id.* ¶ 16, 805 P.2d at 124. The Court specifically held:

> As mentioned earlier, the only grounds recited in the orders are the best interest of the child and the failure of "efforts to reunite the family." While the best interest of the child is, of course, a significant consideration in termination proceedings, it is not the only one. The rights of the parents are also important. To protect the rights and interests of both parent and child the legislature has specified predicatory procedures to be followed and facts to be found. Although there appears to be evidence supportive of certain underlying facts in this case, the issues of fact have not been determined. The orders are not responsive to the pleadings and do not comply with the fundamentals of the law. They must be vacated.

*Id.* ¶ 17, 805 P.2d at 124. In *Matter of B.M.O.*, 1992 OK CIV APP 89, 838 P.2d 38, Division 3 of this Court declared:

> Termination can be sanctioned only on a finding that Appellant failed to correct the very conditions which led to the deprived adjudication. In the absence of a clear statement by the trial court as to what those conditions were, either in the adjudicative order or the termination order, we are effectively precluded from determining if the trial court acted properly in terminating Appellant's parental rights.

*Id.* ¶ 10, 838 P.2d at 40 (citation omitted).

¶ 13 Citing *Matter of B.M.O.*, Division 4 of this Court in *Matter of E.M.*, 1999 OK CIV APP 32, 976 P.2d 1098, stated:

> Termination of parental rights can be sanctioned only upon a finding which strictly comports with a specific statutory basis for the termination. In the absence of a clear statement by the trial court as to what that authority was, and what conditions which led to the deprived adjudication the parent has failed to correct, "we are effectively precluded from determining if the trial court acted properly in terminating ... parental rights."

*Id.* ¶ 13, 976 P.2d at 1101–1102. In *Matter of M.D.R.*, 2002 OK CIV APP 75, 50 P.3d 1160, Division 3 vacated the trial court's order for failure to identify the requisite findings and on remand directed the trial court to enter a corrected order. Relying upon *Matter of L.S.*, *Matter of E.M.*, and *Matter of B.M.O.*, the Court found:

> The termination order merely states that Appellant "has failed to correct the conditions" and that termination of Appellant's rights "is in the best interests of said child". The specific statutory basis is not identified, necessary statutory findings are absent and the "conditions" are not identified. Although there appears to be evidence supportive of certain underlying facts in this case, the order appealed is fundamentally deficient and must be vacated.

*Id.* ¶ 8, 50 P.3d at 1162.

¶ 14 The first minor deviation from these cases arose in *Matter of P.S. & D.S.*, 2004 OK CIV APP 29, 87 P.3d 1110. In *Matter of P.S. & D.S.*, the mother's allegation of error was based upon her request that the verdict form for termination include a finding that termination was in the best interests of the children, which the trial court refused. Division 3 held:

> [T]he court adequately advised the jury of the necessity of a finding, by clear and convincing evidence, that it is in the best interests of the children that Mother's rights be terminated. While including it on the verdict form is preferable, omitting it when the jury is properly instructed on the issue is not fatal to the jury's finding Mother's rights should be terminated.

The court in its order specifically found termination of her rights was in the best interests of the children.

*Id.* ¶ 5, 87 P.3d 1110, 1111. Division 3 in *Matter of W.A.,* 2004 OK CIV APP 50, 91 P.3d 682 reaffirmed the prior decisions requiring specific factual findings to support termination:

Division 3 addressed this issue most recently in *Matter of M.D.R.,* 2002 OK CIV APP 75, 50 P.3d 1160. It held, consistent with previous decisions, that an order terminating parental rights must "identify the specific statutory basis relied on" and must "contain the specific findings required by that statutory provision." *Id.* at ¶ 7, 50 P.3d at 1161. The Journal Entry of Judgment here is completely lacking in that regard. In the absence of the required findings, "we are effectively precluded from determining if the trial court acted properly in terminating ... parental rights." *Matter of E.M.,* 1999 OK CIV APP 32, ¶ 13, 976 P.2d 1098, 1102 (quoting from *Matter of B.M.O.,* 1992 OK CIV APP 89, ¶ 10, 838 P.2d 38, 40).

*Id.* ¶ 5, 91 P.3d at 683.

¶ 15 Division 3 departed from these prior holdings in *Matter of E.G.,* 2010 OK CIV APP 34, 231 P.3d 785. In *Matter of E.G.,* mother argued the order terminating her parental rights was defective because it failed to make specific findings of the conditions she failed to correct. Division 3 disagreed and concluded:

Mother's argument is unpersuasive because there is no Oklahoma Supreme Court precedent mandating such precise detail in Orders terminating parental rights for failure to correct conditions, particularly where the record clearly demonstrates that the parent was provided adequate notice of the conditions requiring correction throughout the adjudication and termination proceeding. Of course, due process requires sufficient notice to the parent of the specific conditions which the law requires to be changed. *In re B.M.O.,* 1992 OK CIV APP 89, 838 P.2d 38. Here, the specific conditions were articulated in the treatment plan which was acknowledged and approved by Mother, court-approved and adopted by the court as the judicially ordered norms of conduct.

*Id.* ¶ 7, 231 P.3d at 788. Division 3 confirmed its divergence from the line of cases following *Matter of L.S.:*

We reject Mother's claim that the trial court's order must precisely detail each of the conditions that was not corrected. No Oklahoma Supreme Court case mandates such detail. In any event, Mother was provided with sufficient notice of the specific conditions that she was required to correct in the court approved ISP. We hold the ISP constituted sufficient notice of the conditions that required correcting to satisfy due process.

*Matter of Children M.B., J.R. and M.B.,* 2010 OK CIV APP 41, ¶ 10, 232 P.3d 927, 931.

¶ 16 Division 1 subsequently held in *Matter of B.C.,* 2010 OK CIV APP 103, 242 P.3d 589:

A specific statement of the condition leading to the adjudication the child is deprived is paramount to the case. The statement must appear in the trial court's order adjudicating the child deprived, in the ISP, and in the order terminating parental rights upon § 1–4–904(B)(5) grounds. In order for the jury to make a finding the parent failed to correct the condition, the jury must be instructed what the condition was. Therefore, the statement should appear in the jury instructions as well. . . .

The record shows the jury did not render a special verdict making findings. Had the jury instructions identified the specific condition leading to termination, we could conclude the jury had made the necessary findings supporting its verdict. However, not only does the language of the finding ascribed to the jury of the conditions leading to termination appear nowhere in the jury instructions, it uses only general terms and does not state the specific condition identified in the ISP. The deficiency of the termination order cannot be cured merely by entering an amended

order where the record does not show the jury made the necessary findings. *Id.* ¶ 10–11, 242 P.3d at 592.

¶ 17 This Court finds the reasoning of *Matter of B.C.* sound. We conclude in cases where termination of parental rights is sought for failure to correct conditions pursuant to 10A O.S. § 1–4–904(B)(5), the jury instructions must contain a specific statement of the condition(s) the parent is alleged to have failed to correct. Likewise, the termination order must identify the uncorrected condition(s). *Matter of B.M.O.; Matter of E.M.; Matter of B.C.*[5] Absent identification of the condition(s) the parent failed to correct in both the jury instructions and the termination order the appellate courts are "effectively precluded from determining if the trial court acted properly in terminating Appellant's parental rights." *Matter of B.M.O.*, ¶ 10, 838 P.2d at 40.

¶ 18 In the instant case, the jury instructions contained absolutely no identification of the conditions Mother failed to correct.[6] Similarly, the verdict forms, to which Mother's counsel objected, contained no identification of the conditions Mother failed to correct. Although the verdict forms used in this case complied with OUJI—Juvenile No. 2.8 Verdict Form–Termination of Parental Rights, that form instruction is deficient in that there is no way to determine which of the conditions the jury determined were uncorrected. A way to remedy that deficiency is to require a separate verdict form for each of the uncorrected conditions which is supported by the evidence at trial. Furthermore, the verdict forms for termination should state that the parent has been given at least three months to correct the condition and that termination is in the best interests of the child(ren). These are findings required of the finder of fact-in this case the jury. That these findings might be implied is no substitute for actual findings in cases with the gravity of a parental rights termination. The verdict forms in this case contained no findings of the uncorrected conditions, no finding that Mother was given at least three months to correct the conditions and no finding that termination is in the children's best interests.

¶ 19 Even more concerning is the fact that the trial court's post-trial Order Sustaining the State's Motion to Terminate Parental Rights Upon a Jury Verdict did not include all of the required statutory findings. The Order recognized R.A., W.A., Z.A. and A.A. had been previously adjudicated deprived. The Order restated the language from the deficient verdict forms, finding only generally that Mother failed to correct conditions and further stated: "The Court further finds the termination of parental rights provisions of said Acts have been complied with."[7] The Order, however, did not identify the conditions Mother was charged with and failed to correct, did not find that she had been given three months to correct the conditions, did not find that termination was in the best interests of the children and did not find that the requirements for termination were proven by clear and convincing evidence.

¶ 20 The deficiencies in jury instructions and verdict forms make it impossible to determine whether the jury made the necessary findings to support termination of Mother's parental rights. Accordingly, this Court finds fundamental error in the jury instructions, verdict forms, and the trial court's order of termination. To facilitate a meaningful appellate review, the order of termination must identify specifically which of the conditions the jury determined Mother was

---

5. We acknowledge, but specifically disapprove of, the contrary holdings set forth above in: *Matter of E.G.*, 2010 OK CIV APP 34, 231 P.3d 785 and *Matter of Children M.B., J.R., and M.B.*, 2010 OK CIV APP 41, ¶ 10, 232 P.3d 927.

6. Although not substantive law themselves, even the Oklahoma Uniform Jury Instructions for Juvenile Cases require a statement of "the material allegations of the petition regarding grounds for termination of parental rights." See OUJI—Juvenile No. 2.2–Statement of the Case.

7. Each verdict form contained the same language for each child:

   We the jury, impaneled and sworn in the above-entitled case, do upon our oaths, find that the parental rights of the parent KEISHA ALBERT to the child, [R.A./W.A./Z.A./A.A.], SHOULD BE TERMINATED on the statutory ground that the parent failed to correct the conditions which caused the child to be deprived.

charged with correcting and failed to correct and make the other required findings as well.

¶ 21 While we find fundamental error in the jury instructions, verdict forms and the trial court's order of termination, we feel it necessary to also address Mother's first proposition of error alleging a violation of due process. Mother claims the trial court improperly found reasonable efforts were made to prevent break-up of the family, because her ISPs failed to address her mental health issues.

■■■ ¶ 22 "In passing upon a claim that the procedure used in a proceeding to terminate parental rights resulted in a denial of procedural due process, we review the issue *de novo.*" *In the Matter of A.M. & R.W.,* 2000 OK 82, ¶ 6, 13 P.3d 484, 487. "*De novo* review requires an independent, non-deferential re-examination of another tribunal's legal rulings." *Id.* This Court must determine on a case-by-case basis whether the parent was afforded the appropriate level of process. *Id.* at ¶ 9, 13 P.3d at 487. "Termination of a right so fundamental as that of a parent to his natural child calls for an application of the full panoply of procedural safeguards." *Matter of Adoption of C.M.G.,* 1982 OK 156, ¶ 9, 656 P.2d 262, 265.

■■■ ¶ 23 The Oklahoma Supreme Court declared in *Matter of C.G.,* 1981 OK 131, 637 P.2d 66:

> Due process inexorably commands notice which reasonably informs a person that his legally-protected interest may be adversely affected. Any parent whose child is adjudged to occupy a legal status termed "deprived" must be judicially advised of those parental conduct norms which he is expected to follow or eschew to recapture a legally unencumbered standing as a parent. The very purpose of these norms is to afford the parent an opportunity to ameliorate his condition and to effectively defend against termination efforts. Judicial notice cannot depend on inferences to be gathered from reports of social workers or of medical doctors. It can only be found in written judicially-prescribed norms of conduct to which the parent is expected to conform. Once these norms have been fashioned with clarity, the parent is entitled to the minimum statutory period of three months to conform.
>
> Judicial clarity in the prescribed norms of parental conduct is essential to the preservation of the procedural safeguards mandated by state and federal due process. A "fair warning" requirement breathes life into these fundamental-law guarantees, while lack of specificity makes them meaningless.

*Id.* ¶ 9–10, 637 P.2d at 68–69. "The ISP serves as the mechanism for guiding the parent in correcting the condition in order to provide the child with a safe home." *Matter of B.C.,* ¶ 9, 242 P.3d at 592.

¶ 24 In *Matter of C.R.T.,* 2003 OK CIV APP 29, 66 P.3d 1004, the Court of Civil Appeals considered termination of parental rights where one of the grounds for termination "arose as a consequence of and out of Mother's original mental health problems." *Id.* ¶ 12, 66 P.3d at 1008. The appeals court overturned the termination of the mother's parental rights holding:

> The judgment of termination of Mother's parental rights reached below must be reversed because the nature of the "condition" existing here is such that it is not correctable solely through the efforts of Mother. It would be patently unfair, if not also a violation of Substantative [sic] Due Process, to permit termination of the parental relationship for failure to correct a condition which cannot be remedied by the parent without medical, psychiatric, and psychological intervention.

*Id.* ¶ 17, 66 P.3d at 1009. The Court found the mother's mental illness was the condition that needed to be corrected and "the alleged failure to correct the condition follows and flows directly from the condition itself." *Id.* ¶ 21, 66 P.3d at 1010. The reasoning of the Court was set forth as follows:

> How is it possible in the State of Oklahoma that a governmental agency could seek to terminate a fundamental, constitutionally-protected relationship for failure to correct a mental condition when such failure is part of the mental condition itself? The answer is, of course, that it is not possible. The reason it is not possible is that Sub-

stantative [sic] Due Process of Law, separately from procedural safeguards, imposes the requirement that all government actions not be arbitrary; that the actions have a fair and reasonable impact on the life, liberty, and property of the person affected; and, that the means selected shall have a reasonable and substantial relation to the objective being sought.

*Id.* ¶ 22, 66 P.3d at 1010 (citing *City of Edmond v. Wakefield,* 1975 OK 96, ¶ 6, 537 P.2d 1211, 1213; *Williams v. State ex rel. Dept. of Public Safety,* 1990 OK CIV APP 27, ¶ 14, 791 P.2d 120, 124).

¶ 25 Mother argues DHS and the trial court failed to address her serious mental health issues which were intertwined with her substance abuse. Instead, Mother suggests her ISPs recommended treatment and/or therapy focused on her substance abuse. Mother alleged both at trial and on appeal her alleged failure to correct the conditions in the ISP was caused by her mental condition.

¶ 26 The State does not dispute the existence or severity of Mother's mental health issues. The State claims Mother's treatment plans sufficiently addressed her mental health problems and fully advised Mother of the conditions that had to be corrected to regain custody of her children. The State notes the services provided to Mother included inpatient and outpatient therapy which included extensive discussions about the trauma of her past. The State contends it was Mother's unwillingness and lack of cooperation that resulted in her failure to correct the conditions identified in her ISPs leading to the termination of her parental rights.

¶ 27 Concerning the development of the ISP, 10A O.S. Supp.2009 § 1–4–704(C)(1) requires:

The individualized service plan shall be based upon a comprehensive assessment and evaluation of the child and family and shall be developed with the participation of the parent, legal guardian, or legal custodian of the child, the attorney for the child, the guardian ad litem for the child, if any, the child's tribe, and the child, if appropriate. The health and safety of the child shall be the paramount concern in the development of the plan.

Section 1–4–704(D)(3) allows for modification of the ISP as necessary.

¶ 28 The testimony presented on behalf of the State shows DHS recognized Mother's substance abuse was deeply rooted in her mental health problems. Jennifer Wilburn, the therapist who treated Mother for approximately two months during the drug court proceedings, testified extensively about Mother's therapy and treatment. Ms. Wilburn indicated she treated Mother beginning in September 2010 through October 2010, when Mother admittedly relapsed. Ms. Wilburn stated she had sporadic contact with Mother from late October or early November 2010 until January 2011 when all contact ceased. Ms. Wilburn administratively closed Mother's case file in March 2011 for lack of contact.

¶ 29 Ms. Wilburn recalled discussions in the drug court proceedings about how intertwined Mother's substance abuse was with her past trauma. Despite this fact, only Ms. Wilburn admitted to discussing with Mother the correlation between her traumatic past and her drug use, or the possibility that failure to address her trauma could inhibit her ability to conquer her substance abuse. In fact, Catherine Holzer, the Tulsa County drug court coordinator, admitted Mother's mental health issues were discussed during the drug court "staffings," but Mother was not present during these meetings. Ms. Holzer further testified she never directly informed Mother of the need to specifically address her mental health issues, and such issues were never discussed during the drug court hearings.

¶ 30 Ms. Wilburn confirmed Mother's substance abuse was an attempt to self-medicate or to numb the feelings associated with the trauma. Ms. Wilburn also indicated that attempts by Mother to address her trauma without some sobriety could lead down an even more destructive road. Ms. Wilburn discussed with Mother the benefits of medications for treating her mental illness, but she did not know if Mother ever received the

medical treatment to obtain any such medication.

¶ 31 Although Mother was required to have a psychological evaluation by the drug court, none of the recommendations of such evaluation were ever added to her ISP. In fact, Mother's DHS case worker admitted at trial that neither she nor anyone else from DHS discussed the findings of the psychological evaluation with Mother until two weeks before the trial to terminate Mother's parental rights.[8]

¶ 32 In the Recommendations set forth in Mother's psychological evaluation, of which there are many, the report specifically recognized:

> [Mother] has a significant trauma history, and has developed posttraumatic stress disorder, which is of a complex and chronic type. Cognitive behavioral therapies such as exposure therapy are considered to be the most effective at this time, and Ms. Albert should receive individual therapy that addresses and treats these symptoms. *It is unlikely she will be able to sustain continued sobriety without such treatment, since she has used substances to 'self-medicate' aversive internal stimuli for years.* (Emphasis added.)

The evaluation recommended multiple areas of therapy, counseling and training classes, including specific parenting classes for Mother.

¶ 33 Based upon our review of the record, this Court finds the three ISPs entered in this case failed to adequately address the actual "condition" Mother needs to correct-her mental illness. Mother's substance abuse clearly follows and flows directly from her mental health condition. *Matter of C.R.T.,* ¶ 21, 66 P.3d at 1010. Mother's history of significant trauma leading her to need to self-medicate is a condition that the psychological evaluation and Ms. Wilburn both conceded could not be corrected "solely through the efforts of Mother" without "medical, psychiatric, and psychological intervention." . *Id.* ¶ 17, 66 P.3d at 1009. As such, termination of Mother's parental rights based upon a failure to correct conditions where Mother's mental health condition was not correctly identified and/or addressed by DHS constitutes a violation of Mother's substantive due process rights.[9] *Id.*

¶ 34 Additionally, the ISPs failed to effectively offer Mother the "opportunity to ameliorate [her] condition and to effectively defend against termination efforts" by failing to adequately address her mental illness. *Matter of C.G.,* ¶ 9, 637 P.2d at 68. While evidence was presented to show Mother failed to correct the conditions stated in her ISPs, the ISPs failed to properly identify, address or offer services specifically directed to the recognized cause of Mother's substance abuse—her severe mental health issues. In failing to incorporate the information and recommendations garnered from Mother's November 2010 court-ordered psychological evaluation into her ISP, Mother was not afforded the full spectrum of procedural safeguards to guard against termination of her parental rights.

¶ 35 Based upon the trial court's fundamental errors in the jury instructions, the verdict forms, and the order of termination, as well as the denial of Mother's substantive and procedural due process rights, the trial court's order terminating Mother's parental rights is REVERSED. This opinion does not affect the current DHS foster care placement of these children, which is DHS's sole purview and responsibility. This case is REMANDED with instructions to the trial court to allow Mother the appropriate level of due process. On remand, Mother's ISP must be

---

8. Approximately nine months elapsed between the drug court's dissemination of Mother's psychological evaluation to the involved parties and the case worker discussing the evaluation with Mother.

9. In accordance with *Matter of C.R.T.* and based upon Mother's recognized mental illness, termination should have been pursued under 10A O.S. Supp.2009 § 1–4–904(B)(13). The more specific statute concerning termination based upon mental illness would be controlling over the more general statute concerning failure to correct conditions set forth in 10A O.S. Supp.2009 § 1–4–904(B)(5). *Matter of C.R.T.,* ¶¶ 30–31, 66 P.3d at 1011.

modified to identify Mother's mental illness as a condition to be corrected and offer treatment and/or services specifically directed to Mother's mental health issues as recommended in Mother's November 2010 psychological evaluation. Mother must also be afforded the appropriate statutory time period to comply with the updated ISP.

BELL, P.J., and HETHERINGTON, J., concur.