2013 OK CIV APP 70

**In the Matter of J.K.T., an Alleged Deprived Child.**

**Jack Joseph Taylor, Sr., Appellant,**

v.

**State of Oklahoma, Custer County, Appellee.**

**No. 111241.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 10, 2013.

Ryan A. Meacham, Meacham Law Firm, Clinton, Oklahoma, for Appellant.

S. Brooke Gatlin, Assistant District Attorney, Arapaho, Oklahoma, for Appellee.

BRIAN JACK GOREE, Judge.

¶1 Appellant, Jack Joseph Taylor, Sr., (Father) appeals the trial court order terminating his parental rights to his minor child, J.K.T. (Child) based on a jury verdict which found his parental rights to other children had been terminated. 10A O.S.2011 § 1–4–904(B)(6). We affirm because the jury's verdict expressly identified the conditions that had not been corrected.

¶2 The Department of Human Services (DHS) filed an application for emergency custody of Child, and Father was arrested and charged with child abuse by injury, a felony, in Custer County District Court Case No. CF–2010–383. The trial court entered an order of adjudication determining Child to be deprived "... by reason of failure to protect from abuse as to the mother; abuse

as to the father and fathers (sic) prior child welfare history resulting in termination of two siblings."

¶3 On February 3, 2011, State filed its Initial Petition to Terminate Parental Rights, and on February 17, 2011, State filed an Amended Petition to Terminate Parental Rights of Father, Jack Taylor based upon 10A O.S. § 1–4–904(B)(6). Father was then convicted of child abuse by injury in the criminal case.[1] On September 12, 2012, State filed its Amended Petition to Terminate Parental Rights of Jack Taylor Sr., based on 10A O.S.2011 § 1–4–904(B)(5) and (6).[2] It alleged:

That the biological father of said child is Jack Joseph Taylor, Sr, who is currently incarcerated at the Oklahoma State Reformatory, Granite, Oklahoma. That the rights of the father to other children have been terminated and the conditions that led to the prior termination have not been corrected, specifically that the parental rights of the father to James J. Taylor (dob: 01/19/2000) and Jessica L. Creswell (dob: 10/17/2001) were terminated in Custer County case number JD–2002–33 on May 10, 2004; and that the father's failure to correct the conditions that led to the removal of the other children from his home and that led to the prior termination of parental rights have not been corrected as evidenced by the adjudication of this child as deprived by the father and the circumstances surrounding the Department of Human Services involvement with

the father and family from February 26, 2010 through September 16, 2010.

¶4 Following the trial, the jury returned a verdict terminating Father's parental rights.[3] The trial court entered its Order Sustaining State's Motion to Terminate Parental Rights upon a Jury Verdict pursuant to 10A O.S. 2011 § 1–4–904(B)(6). In the order, the trial court adopted the jury's findings and stated:

Specifically, the Jury found that based on the evidence submitted, the State had met its burden to show that the parental rights of Jack Taylor to prior children were terminated. The jury further found that the following conditions that led to the termination of Jack Taylor's parental rights to prior children have not been corrected:

1. Failure to develop appropriate parenting skills;
2. Failure to provide appropriate supervision for the child(ren);
3. Failure to address emotional stability;
4. Failure to provide economic stability for the chilre(ren).[sic]

Additionally, the jury found that termination of Jack Taylor's parental rights in and to [JKT] is in the child's best interest. Father appeals.

¶5 When reviewing a trial court's termination of parental rights, the reviewing court examines the record on appeal to ascertain whether its decision is supported by clear and convincing evidence. *In re S.B.C.*, 2002 OK 83, ¶6, 64 P.3d 1080, 1082.

1. On November 17, 2011, State filed a Petition to Terminate Parental Rights of Christina Gregory and Jack Taylor Sr. to include the termination of the parental rights of Christina Gregory, Child's mother (Mother).

   On May 17, 2012, State filed an Amended Petition to Terminate Parental Rights of Father, Jack Taylor, based upon 10A O.S. § 1–4–904(B)(8)(2) as a result of Father's conviction in the criminal case. However, the trial court granted Father's motion in limine to exclude evidence of the criminal trial and Father's conviction.

2. This amended petition stated Mother's parental rights were terminated on May 9, 2012.

3. The verdict form provided:

**VERDICT**

*TERMINATE PARENTAL RIGHTS*

We, the jury, empanelled and sworn in the above entitled cause, do upon our oaths, find that the parental rights of the parent, Jack Taylor, Sr. to the child, [J.K.T.] SHOULD BE TERMINATED on the statutory ground that the rights of the father to another child or children have been terminated, and the conditions that led to the prior termination of parental rights have not been corrected. We find the Father failed to correct the conditions indicated below:
   ___failure to establish parent/child bond;
   X failure to develop appropriate parenting skills;
   X failure to provide appropriate supervision for the child(ren);
   X failure to address emotional stability;
   X failure to provide economic stability for the child(ren).

## I.

¶ 6 Father contends the trial court erred in failing to instruct the jury regarding the specific conditions he allegedly failed to continue to correct in the present case.[4] He claims that, as a result, the jury was effectively precluded from making a proper determination regarding the termination of Father's parental rights.

¶ 7 "No judgment shall be set aside by any appellate court on the ground of misdirection of the jury ... unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2011 § 3001.1.

■ ¶ 8 Title 10A O.S.2011 § 1–4–904(B)(6) provides that a trial court may terminate the rights of a parent to a child based on a finding that:

    a. the rights of the parent to another child have been terminated, and

    b. the conditions that led to the prior termination of parental rights have not been corrected.

¶ 9 Father submits that case law has interpreted the provisions of § 1–4–904(B)(5), the termination of parental rights upon failure to correct conditions, to require an identification of the uncorrected conditions in a jury instruction. He cites *In the Matter of R.A., W.A., Z.A., and A.A.,* 2012 OK CIV APP 65, 280 P.3d 366, wherein the Court of Civil Appeals conceded there exists a split of authority in the Court concerning the specifics that must be addressed by the jury and/or the trial court through jury instructions, verdict forms, and the order of termination. It held that "absent identification of the condi-

---

4. At trial, Father objected to Instructions No. 14, 15, and 16. He argues those instructions should have included identification of the specific conditions he allegedly failed to continue to correct in the present case.

Instruction No. 14 (OUJI–Juv. No. 3.6)

The State seeks to terminate the parent's rights on the basis that a child has been born to a parent whose parental rights to another child have already been terminated before. In order to terminate parental rights on this basis, the State must prove by clear and convincing evidence each of the following elements:

    1. The child has been adjudicated to be deprived;

    2. The parent's parental rights to another child have been terminated before;

    3. The conditions which led to the prior termination of parental rights have not been corrected; and,

    4. Termination of parental rights is in the best interest of the child.

In *In re Amendments to Oklahoma Uniform Jury Instructions for Juvenile Cases,* 2005 OK 12 ¶ 6, 116 P.3d 119, 147, the Oklahoma Supreme Court expressly adopted this uniform instruction.

Instruction No. 15 (OUJI–Juv. No. 3.5 modified)

In order for you to find that there has been a failure to correct the conditions which caused a child to be found deprived, you must find that the Court placed the parent on notice of the conditions to be corrected by means of an individualized service plan.

An "individualized service plan" provides a list of activities or standards of conduct that are designed to assist the parent to correct the conditions that caused a child to be deprived.

Failure to complete an individualized service plan alone is not a basis to terminate parental rights, but it is evidence that the jury may consider in determining whether the conditions have been corrected.

Instruction No. 16 (OUJI–Juv. No. 2.5)

The State has a burden of proving all the requirements for the termination of the parent's rights by clear and convincing evidence and you may return a verdict finding that parental rights are terminated only if you find that the State has satisfied its burden of proof. When I say a party has the burden of proving any proposition by clear and convincing evidence, I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt.

For purposes of this case, you are required to accept the following matters as true:

    1.) The child was adjudicated deprived and made a ward of this Court on the 22nd day of December, 2010.

    2.) The natural mother of said child is Christina Gregory, whose parental rights were terminated by the Court on the 9th day of May 2012.

    3.) The biological father of said child is Jack Joseph Taylor Sr. His parental rights to other children were terminated in Custer County case number JD–2002–33 on the 10th day of May, 2004.

    4.) In 1999 Child Protective Services for the State of Arizona took custody of other children of Jack Joseph Taylor, Sr. On July 16, 1999, Jack Joseph Taylor, Sr. voluntarily signed a "Consent to Place a Child for Adoption" which under Arizona law severes (sic) the parent-child relationship.

tion(s) the parent failed to correct in both the jury instructions and the termination order the appellate courts are 'effectively precluded from determining if the trial court acted properly in terminating Appellant's parental rights,' " quoting *Matter of B.M.O.*, 1992 OK CIV APP 89, ¶ 10, 838 P.2d 38, 40.

¶ 10 On the other hand, "there is no Oklahoma Supreme Court precedent mandating such precise detail in Orders terminating parental rights for failure to correct conditions,...." *In the Matter of E.G.*, 2010 OK CIV APP 34, ¶ 7, 231 P.3d 785, 788; *In the Matter of Children of M.B.*, 2010 OK CIV APP 41, ¶ 10, 232 P.3d 927, 931. Okla. Const. Art. VII § 15 provides:

> In all jury trials the jury shall return a general verdict, and no law in force nor any law hereafter enacted, shall require the court to direct the jury to make findings of particular questions of fact, but the court may, in its discretion, direct such special findings.

¶ 11 In *In the Matter of C.T.*, 2003 OK CIV APP 107, 82 P.3d 123, the mother asserted the jury, as fact-finder, should be required to make specific factual findings on all the statutory requisites for termination of her parental rights. Citing Okla. Const. Art. VII § 15, the Court of Civil Appeals found no authority requiring a jury in parental-rights-termination actions to enter specific findings on each statutory ground for termination.

¶ 12 Although Father argues Instructions No. 14, 15, and 16 were improperly given because they did not include identification of the specific conditions he continued to fail to correct, jury instructions are to be viewed as a whole rather than separately. *Middlebrook v. Imler, Tenny & Kugler M.D.'s Inc.*, 1985 OK 66, ¶ 34, 713 P.2d 572, 585. They are sufficient if, considered as a whole, they present the law applicable to the issues.

*Quarles v. Panchal*, 2011 OK 13, ¶ 11, 250 P.3d 320, 323.

¶ 13 Here, those instructions, Instruction No. 17,[5] and the verdict form entitled Terminate Parental Rights, considered as a whole, correctly state the law and are consistent with § 1–4–904(B)(6). The best guide to determine if a party was prejudiced by erroneous instructions is to look at whether the verdict is supported by clear and convincing evidence. *See Juvenal By and Through Juvenal v. Okeene Public Schools*, 1994 OK 83, ¶ 4, 878 P.2d 1026, 1030. If clear and convincing evidence supports the verdict, we will not disturb it because of erroneous instructions "unless it appears reasonably certain the jury was misled." *Id.*

¶ 14 The record contains clear and convincing evidence Father continued to fail to correct the conditions which led to his prior termination of parental rights; the trial court identified the same five conditions on the verdict form which were listed on the individualized service plan (ISP)[6] in the prior termination case; and from those five conditions identified on the verdict form, the jury determined Father continued to fail to correct four conditions. The jury was aware of and considered all of the conditions Father was alleged to have failed to continue to correct. The jury was not effectively precluded from making a proper determination regarding the termination of Father's parental rights.

¶ 15 Additionally, Father does not contend error in the form of the Order. The Order mirrored the verdict form in finding Father's failure to correct four of the five conditions listed on the verdict form. The jury and the trial court made findings sufficient to support the termination of Father's parental rights.

¶ 16 Not only does clear and convincing evidence support the verdict, we do not find the instructions as a whole "probably result-

---

**5.** Instruction No. 17 (OUJI–Juv. 2.7)
If you find that the State has proved by clear and convincing evidence that the parental rights of the parent, Jack Taylor, Sr., to the child, James Kirby Taylor, should be terminated on the statutory grounds of the rights of the parent to another child have been terminated, and the conditions that led to the prior termination of parental rights have not been correct-

ed, you should sign and return the verdict form entitled Terminate Parental Rights. Otherwise, you should sign and return the verdict form entitled Do Not Terminate Parental Rights for that parent and that child.
Notify the Bailiff when you have arrived at a verdict so that you may return it in open court.

**6.** The ISP was an exhibit at trial.

ed in a miscarriage of justice." 20 O.S.2011 § 3001.1.

## II.

¶ 17 Next, Father alleges the trial court improperly admitted Mother's testimony from Father's criminal trial over his objection because Mother was not an unavailable witness pursuant to 12 O.S.2011 § 2804. That statute provides:

**Hearsay Exception; Declarant Unavailable**

A. "Unavailability as a witness," as used in this section, includes the situation in which the declarant:

. . .

5. Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or, in the case of a hearsay exception under paragraphs 2, 3, or 4 of subsection B of this section, the declarant's attendance or testimony, by process or other reasonable means.

¶ 18 Father argues State failed its burden of proving Mother was unavailable to testify at the termination hearing. The State has the burden of establishing that "the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Ohio v. Roberts*, 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980).

¶ 19 Mother was a party in this matter, and the trial court, who had presided over each stage of the adjudication process, was familiar with Mother through her appearances at the various hearings. During the course of the termination proceedings, Mother moved to Amarillo, Texas, to live with her mother. In May 2012, while living there, her parental rights to Child were terminated.[7]

¶ 20 At the motion hearing prior to trial, when asked by the trial court if she had made efforts to locate Mother, State's counsel stated:

Yes, Judge. I have, since last—last week, when I got the—since last Wednesday, I have had two different people calling her on the phone number that does work.

I have had contact with the police, sheriff's agency in Amarillo, trying to see if they can go out and locate and see if she will call our office.

I have sent a subpoena certified mail to her. I have, um—she has not appeared here in court for this case, and her rights were defaulted out.

She did appear for the jury trial and was sworn, under oath, and was cross-examined by Mr. Taylor's defense attorney.

So for all of those reasons, Judge, that's why I'm asking to declare her unavailable and ask to read her trial transcript into the record.

THE COURT: Okay. This appears to fit under 2804(B)(1). She appears to be unavailable. I don't believe it's the Proponent's——it's not the State's fault that she is unavailable.

And I mean, if you will look at the record in this case, she has not been coming to court and quit coming to court over a year ago.

She was——she did give testimony at another hearing on the very same issue. Which would be the allegation of, you know, the injury to the child. He had the opportunity to cross-examine.

¶ 21 A subpoena was issued for Mother's attendance at Father's hearing, and mailed, certified mail, to the Amarillo, Texas, address. The subpoena sent to the Amarillo, Texas, address, and State's other attempts to contact Mother constitute a good faith effort to locate her. In this particular case, we cannot say the trial court abused its discretion in finding Mother unavailable for the current proceedings. *See In re J.D.H.*, 2006 OK 5, ¶ 4, *130 P.3d 245*, 247.

¶ 22 Father also complains that pursuant to *12 O.S. 2011 § 2804*(B)(1), there was no similar motive requisite to justify the allowance of Mother's testimony from Fa-

---

7. At trial, Mr. Clark, the DHS permanency planning worker testified that before Mother's parental rights were terminated, she had "quit appear-
ing to court." While living in Amarillo, Mother indicated she wished to relinquish her parental rights to Child.

ther's criminal trial. Section 2804(B)(1) provides:

B. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

1. Testimony given as a witness at another hearing of the same or another proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered or, in a civil action or proceeding, a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination;

In his criminal prosecution, Father was charged with child abuse under 21 O.S.2010 § 843.5. This section defines abuse by referring to 10A O.S.2011 § 1–1–105(2), which provides:

"Abuse" means harm or threatened harm or failure to protect from harm or threatened harm to the health, safety, or welfare of a child by a person responsible for the child's health, safety, or welfare, including but not limited to nonaccidental physical or mental injury, sexual abuse, or sexual exploitation. Provided, however, that nothing contained in this act shall prohibit any parent from using ordinary force as a means of discipline including, but not limited to, spanking, switching, or paddling.

¶ 23 Father argues the cross-examination of Mother at the criminal trial did not encompass the same type of inquiry as the termination trial required, because State sought to terminate his parental rights pursuant to 10A

O.S. 2011 § 1–4–904(B)(6). Therefore, Father's criminal defense counsel had no similar motive for developing Mother's testimony in the criminal trial.[8]

¶ 24 The term "similar motive" should be used in its ordinary sense. *Honeycutt v. State,* 1988 OK CR 76, ¶ 3, 754 P.2d 557, 560. Although the current proceeding is a civil proceeding and the other a criminal proceeding, the motives of Father's criminal counsel for cross-examining Mother are similar to those in the present case. At the criminal trial, Father's counsel's motivation was the impeachment of Mother's testimony regarding events surrounding September 16, 2010, the day Child was taken to the hospital with bruises and cuts to his face.[9] The same impeachment motivation exists in the present matter and is relevant because Child was adjudicated deprived based, in part, on allegations of child abuse in the petition to adjudicate Child as deprived.

¶ 25 Because the motives of Father's criminal defense were similar to those in the present case, the trial court did not abuse its discretion in admitting Mother's testimony from Father's criminal matter. 12 O.S.2011 § 2804(B)(1).

### III

■ ¶ 26 Finally, citing 12 O.S.2011 § 2404(B),[10] Father urges the trial court abused its discretion in admitting evidence [11] he had previously relinquished his parental rights to two children in Arizona and relied on this evidence "as a foundation in its jury instructions." [12] He argues this evidence is

---

8. Father concedes his criminal defense counsel had the opportunity to cross-examine Mother at his criminal trial.

9. September 16, 2010, was also the date Child was removed from the home.

10. Section 2404(B) provides:
   B. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

11. At a motion hearing before trial, Father made a motion in limine to prohibit State "... from

admitting, presenting, using or eliciting any testimony regarding Arizona Child Protective Services records and allegations," because in that record there was no termination petition or deprived petition which contained any allegations. The trial court partially sustained Father's motion, restricting the amount of detail which could be presented regarding the Arizona case.

12. Instruction No. 16 (OUJI–Juv. 2.5) required the jurors to accept as true:
   3.) The biological father of said child is Jack Joseph Taylor Sr. His parental rights to other children were terminated in Custer County case number JD–2002–33 on the 10th day of May, 2004.
   4.) In 1999, Child Protective Services for the State of Arizona took custody of other children

not relevant to the proof required under 10A O.S.2011 § 1–4–904, and that none of the enumerated exceptions-proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, make his prior bad acts relevant.

¶ 27 During the trial, two DHS workers, Mr. Bailey and Ms. Tapper, testified Father had relinquished his parental rights to two children in Arizona.[13] Assuming arguendo, this testimony is irrelevant, Father has failed to demonstrate he was prejudiced by its admission. Pursuant to § 1–4–904(B)(6), the jury and the trial court found Father's parental rights should be terminated specifically because four specific conditions which led to the prior termination of Father's parental rights had not been corrected in the present case. Therefore, even if the testimony were irrelevant, its admission was harmless error. See Matter of T.R.W., 1985 OK 99, ¶ 6, 722 P.2d 1197, 1202.

¶ 28 AFFIRMED.

HETHERINGTON, P.J., concurring:

¶ 29 I concur in this opinion but write to express my approval of the trial court's careful consideration of instructions and verdict form that more fully provides constitutional protections of specificity regarding uncorrected conditions as a basis for parental rights termination. I adopt Judge Mitchell's concurrence and agree that at least this case is a move in the correct legal direction. My review of the trial transcript revealed a thorough presentation of detailed evidence allowing for jury consideration of uncorrected condition facts upon which the jury could make an informed decision on each special interrogatory finding required in the verdict form.

¶ 30 I also find, while harmless error, allowing Mother's testimony from Father's child abuse trial to be read to the jury in this case, is an evidentiary minefield. I find no fault with the "unavailable witness" hearsay ruling. But the inquiry does not end there.

What is most problematic here is the 12 O.S. 2404(B) analysis of introducing hearsay (and some hearsay within hearsay) evidence from the child abuse trial with the intent to prove the character of Father in order to show his actions in this case are in conformity with his actions in the child abuse case or, whether it is offered for a permissible evidence purpose. The final step of judicial weighing of this evidence could easily have found the probative value of admissibility, in light of the other evidence presented in this trial, was out-weighed by its prejudicial effect on the jury. I find harmless error only because after review of the other testimony, I cannot find the verdict result likely to have been different had Mother's hearsay testimony not been allowed.

MITCHELL, J., concurring:

¶ 31 I approve of and applaud the trial court in its termination order specifically finding which uncorrected conditions were the basis of the termination of parental rights. I also approve of and applaud the trial court's use of a verdict form that allowed the jury to identify the specific conditions it determined to be uncorrected. However, either in Instruction No. 14 or in a separate instruction, the jury should have been informed of those same conditions listed in the verdict form but in the context of what the State had alleged and had the burden to prove. That would be a better practice and would minimize the possibility of a successful due process challenge as occurred in Matter of R.A., et al., 2012 OK CIV APP 65, 280 P.3d 366.

¶ 32 All in all, I agree that the Instructions taken as a whole adequately informed the jury of the issues and applicable law and were in no way prejudicial to Father.

---

of Jack Joseph Taylor, Sr. On July 16, 1999, Jack Joseph Taylor, Sr. voluntarily signed a "Consent to Place a Child for Adoption" which under Arizona law severes (sic) the parent-child relationship.

Father did not object to paragraph four of this instruction, or "stipulation."

13. Holly Bonner is the biological mother of the two children in the prior Oklahoma termination case and the Arizona children whose parental rights Father relinquished. Father testified one of three Arizona children died of sudden infant death syndrome. Bonner relinquished her parental rights to all four of the children.