2013 OK CIV APP 21

### In the Matter of L.S., an Alleged Deprived Child.

**Abdel G. Khanpher, Appellant,**

v.

**State of Oklahoma, Appellee.**

**No. 110,551.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 8, 2013.

Edward Frock, Ardmore, Oklahoma, for Appellant.

Kimberly Tressler, Assistant District Attorney, Ardmore, Oklahoma, for Appellee.

Andrew Harlow, Ardmore, Oklahoma, for the Child.

LARRY JOPLIN, Chief Judge.

¶ 1 Appellant/Father, Abdel G. Khanpher, seeks review of the jury's verdict and the trial court's corresponding order terminating his parental rights to his child, L.S., born July 5, 2010. The State sought termination of Father's parental rights after the parental rights of the biological mother had previously been terminated, because the child was born testing positive for amphetamines, the mother was homeless at the time of the child's birth and Father was incarcerated on drug related charges at the time L.S. was born, affecting his ability to properly care for the child after the biological mother was unable to care for the child.

¶ 2 The State alleged Father failed to correct the conditions which led to L.S. being adjudicated a deprived child, despite having been given more than three months to correct the conditions. 10A O.S. Supp.2009 § 1–4–904(B)(5)(a)–(b). The State also alleged termination of Father's parental rights was in the best interests of the child who had been previously adjudicated to be a deprived child. 10A O.S. Supp.2009 § 1–4–904(A)(1)–(2).

¶ 3 L.S. was born on July 5, 2010 and was placed in D.H.S. custody on that day, due to testing positive for amphetamines. At the time, Father was incarcerated. Mother's parental rights with respect to L.S. were eventually terminated. Thereafter, an application to terminate the parental rights of Appellant/Father was set for hearing on June 7, 2011. Father was no longer in custody and was present for this hearing. The court conducted a disposition hearing on July 12, 2011, rendering an order of disposition which contained six standards of conduct Father was required to meet in order to correct the conditions which led to the deprived adjudication of L.S. These conditions were memorialized in Father's Individualized Service Plan (ISP): a) to provide a safe, stable, hygienic, appropriately-furnished home; b) demonstrate the ability to provide the necessary guidance and support to meet the child's emotional, medical and educational needs; c) complete an approved parental skills counseling course and put learned skills into practice; d) obtain employment sufficient to meet the needs of the child; e) complete a D.H.S. approved drug assessment and program; and f) pay child support of $100/month.

¶ 4 Six months later, January 11, 2012, the State filed an application to terminate Father's parental rights, alleging he had failed to correct the conditions that led to L.S. being adjudicated deprived and he had been given at least three months to do so. 10A O.S. Supp.2009 § 1–4–904(B)(5). Father made some progress in correcting the conditions demanded by D.H.S., but ultimately did not fully comply with the ISP. Father demanded a jury trial, which was held on February 7, 2012. The jury returned a verdict to terminate Father's parental rights, finding L.S. had been adjudicated deprived, Father had caused or contributed to such adjudication, Father had failed to correct the conditions which led to the adjudication of the child, although he had been given more than three months to do so, and it was in the child's best interests that his parental rights be terminated. Thereafter, the trial court entered an order terminating Father's paren-

tal rights to L.S. in accordance with the jury's verdict.

¶ 5 Father asserts on appeal that the order terminating his parental rights is fundamentally deficient, because it fails to identify the specific statutory basis upon which the State relied in order to terminate his parental rights; did not make specific findings as required by statute, and did not identify the conditions Father failed to correct which led to the order of adjudication. Father also asserts the State failed to present clear and convincing evidence in support of the termination of his parental rights; Father's right to due process was violated when his parental rights were terminated; The Oklahoma Department of Human Services failed to provide a viable ISP and created obstacles to Father's successful completion of the plan. And Father asserts he was unfairly prejudiced by improper evidence and testimony introduced before the jury.

¶ 6 The State responded, arguing that Appellant was not entitled to a verdict that specifically stated the statutory reasons for the termination, the court's order was supported by clear and convincing evidence, Father was properly advised of the conditions which led to L.S.'s deprived adjudication and advised regarding what conditions he needed to correct in order to meet the demands of the ISP and avoid termination of his parental rights. The State also asserted Father's constitutional and due process rights as a parent had been fully protected and Father was not improperly prejudiced by the evidence presented to the jury.

■■■■ ¶ 7 A parent's right to their offspring is fundamental and requires a higher level of protection. *In the Matter of S.B.C.,* 2002 OK 83, ¶ 6, 64 P.3d 1080, 1083. As a result, to affirm the lower court's decision, appellate review in termination of parental rights proceedings "must demonstrate the presence of clear-and-convincing evidence to support the first-instance decision." *Id.* Legal errors in a termination of parental rights proceeding are reviewed by the appellate court under a *de novo* standard of review. *In the Matter of M.D.R.,* 2002 OK CIV APP 75, ¶ 6, 50 P.3d 1160, 1161.

■■ ¶ 8 Appellant's first proposition of error asserts that the appealed from order is fundamentally deficient and must be vacated, because it lacks mandated predicatory findings. Father cited several cases in support of this proposition, including, *In the Matter of M.D.R.,* 50 P.3d at 1161–62, and *In the Matter of E.M.,* 1999 OK CIV APP 32, 976 P.2d 1098.

¶ 9 In *In the Matter of E.M.,* 976 P.2d at 1101–02, the appellate court found the trial court's order terminating the incarcerated father's parental rights was legally insufficient to support the court's decision:

> In its termination order, however, the trial court did not specify the authority upon which it relied, but found simply that "the State of Oklahoma has shown by clear and convincing evidence that the parental rights of [the father] should be terminated, and that it is in the best interest of the child that parental rights be terminated." Neither finding is legally consistent with, or supportive of, any of the statutorily mandated predicatory findings recited above. *See In re L.S.,* 1990 OK CIV APP 94, ¶ 16, 805 P.2d 120, 123–4.
>
> . . .
>
> Termination of parental rights can be sanctioned only upon a finding which strictly comports with a specific statutory basis for the termination. In the absence of a clear statement by the trial court as to what that authority was, and what conditions which led to the deprived adjudication the parent has failed to correct, "we are effectively precluded from determining if the trial court acted properly in terminating . . . parental rights." *In re B.M.O.,* 1992 OK CIV APP 89, ¶ 10, 838 P.2d 38, 40.

The appellate court made virtually the same finding in *In the Matter of M.D.R.,* 50 P.3d at 1161–62.

¶ 10 In relevant part, the order appealed from states that "father has failed to show that the conditions, which led to the adjudication of the child, have been corrected although he has been given more than three months to correct the conditions; Termination of the father's parental rights is in the best interest of the child." Although the verdict and corresponding order do not list the

specific uncorrected conditions, the jury received instructions listing the specific conditions the State alleged Father failed to correct, mimicking the terms of the ISP. These included a) to provide a safe, stable, hygienic, appropriately-furnished home; b) demonstrate the ability to provide a stable family environment to meet child's nutritional, emotional, medical and educational needs; c) obtain employment sufficient to meet the needs of the parent and child; d) complete an inpatient approved drug program, an outpatient approved drug program and not use or unlawfully abuse controlled substances, nor associate with those who do and submit to random drug testing; and e) pay child support of $100/month.

¶ 11 As a result of having been so instructed, the appellate court can conclude the jury made the necessary findings supporting its verdict. *In the Matter of B.C.*, 2010 OK CIV APP 103, ¶ 11, 242 P.3d 589, 592. Despite Father's contention, we can find no language in 10A O.S. Supp.2009 § 1–4–904 that requires the order of termination to list or specifically make reference to the conditions that were found to be uncorrected. Because Father was repeatedly apprised of the ISP requirements from the disposition date in July 2011 through the conclusion of the jury trial in February 2012, the jury was provided a comprehensive list of the uncorrected conditions as a part of their instructions, and we find no statutory authority for Father's assertion that the conditions need to be re-listed in the termination order itself, we find no relief is warranted upon Father's first proposition of error.

■ ¶ 12 Father next contends the ISP is invalid because it does not contain his signature as required by 10A O.S. Supp.2009 § 1–4–704(C)(4). However, Appellee/State noted Father was present at the hearing where the ISP was adopted by the court and made no objections to the implementation of the ISP. It is also clear, from Father's testimony at trial, that he was aware of the ISP, had reviewed it with the D.H.S. caseworker and made efforts to comply with its terms in order to gain custody of his child. There are cases stating a parent who is in danger of losing parental rights to their adjudicated deprived child must be judicially advised of the conduct which he/she is expected to follow in order to recapture their legally unencumbered standing as a parent. *Matter of C.G.*, 1981 OK 131, 637 P.2d 66, 68. However, this court is not aware of any authority and Father has cited none, which supports his position that the absence of a signature on the ISP report invalidates the ISP, invalidates the parent's notice of its terms, or somehow invalidates the termination proceeding. The record indicates Father had notice of the terms of the ISP and notice of the consequences for his failure to correct the conditions leading to the deprived status of L.S., we can find no basis for relief upon this proposition of error.

■ ¶ 13 Father also asserts the evidence submitted in support of the termination of his parental rights did not rise to the required clear and convincing standard. *In the Matter of S.B.C.*, 64 P.3d at 1083. The record shows Father made efforts to meet the demands of the ISP and correct the conditions that led to L.S.'s deprived adjudication. He sought employment immediately after being released and maintained employment throughout the period in which he was trying to comply with the terms of the ISP. Father also made efforts to visit L.S., but found his bi-monthly visitation sometimes difficult to comply with, largely because L.S. was in custody in Oklahoma while Father worked and lived in Texas. Father also rented a home, which the D.H.S. worker admitted was suitable, but failed to timely provide lease information and photos and seemed less than candid during the D.H.S. home visit, making D.H.S. concerned Father did not actually reside in the house as he represented. Father also entered and apparently completed a drug program in the Dallas area, but never provided the necessary documentation so that D.H.S. could evaluate and approve the plan for purposes of his ISP requirements. In addition, Father's ex-wife and adult step-daughter both testified he was a good parent, although both witnesses admitted they were not aware of Father's more recent drug use or the nature of his behavior when using methamphetamines. Father also paid his child support, albeit late and upon the eve of

trial, but he was able to make full payment prior to the beginning of trial on February 7, 2012. It was also concerning that Father never enrolled or completed the required parenting classes, and testified that he had been a good father to his other children and was not sure what he would have to learn from attending such a class.

¶ 14 In some respects, Father's efforts were commendable, but his inability to comply with the terms of the ISP and follow often simple directives that were repeated at each visitation was especially concerning, particularly in light of the fact that being a single father to a toddler would be much more difficult than complying with the ISP itself. Compliance with the ISP was a chance for Father to demonstrate he had met a standard of conduct expected of him in order to correct the conditions leading to the deprived adjudication and be in a position to responsibly parent L.S. *In re S.A.*, 2007 OK CIV APP 97, ¶ 12, 169 P.3d 730, 735. The State proved by clear and convincing evidence that Father was unable to meet this level of parental competence and the jury agreed. *In re State of Oklahoma In the Interest of K.P.*, 2012 OK CIV APP 32, ¶ 22, 275 P.3d 161, 166–67 (failure to comply with the ISP service plan, in itself, is not grounds for termination of parental rights, but non-compliance with the plan may be considered as evidence that parental rights should be terminated, because the parent has been unable to correct conditions leading to the child's deprived status).

■ ¶ 15 Father's fourth proposition asserts that he cannot be deprived of his parental rights because D.H.S. did not provide appropriate assistance to him in trying to complete the ISP terms, particularly with respect to the drug assessment and treatment requirement. Father contends the state's agents must assist in preserving the family bond and not act as an obstacle to a parent's attempts to meet the State's requirements. *Matter of Christopher H.*, 1978 OK 50, 577 P.2d 1292, 1295.

¶ 16 Father claims D.H.S. workers made no effort to assist him in getting services in the Dallas area and he was forced to seek programs and services on his own and pay for them without any assistance that might have been available had he been able to utilize services in Oklahoma. The record does not support Father's contentions. The caseworker testified she repeatedly explained to Father that pre-approval was necessary before he embarked on any drug program or assessment in Texas, and that it may be possible to financially assist Father if the program was able to take an Oklahoma State payment voucher. However, Father was not diligent in his efforts to get the necessary information to D.H.S. and provided a number of excuses for his failure to do so. While it is clear from this record that a parent's attempts to meet the objectives of an Oklahoma ISP in another state are challenging, Father has failed to show D.H.S. worked as an obstacle against him or thwarted his attempts to comply.

■ ¶ 17 Father's final proposition of error asserts the State improperly prejudiced the jury against him with the introduction of certain improper evidence. Father contends the State should not have portrayed him as someone who missed visitation. However, the fact remained that Father did miss visitation. Father was able to explain during his own testimony how difficult it was to comply with visitation, due to illness and transportation difficulties. And he testified that he always contacted D.H.S. when he missed visitation, but the fact remained he went weeks without seeing L.S. in the fall and winter of 2011. The evidence does not show Father objected to this line of questioning at trial and he has failed to show how he was improperly prejudiced. *Covel v. Rodriguez*, 2012 OK 5, ¶¶ 9–10, 272 P.3d 705, 710 (regarding testimony, evidence introduced at trial without objection is waived on appeal in the absence of fundamental error). The information was factual in nature and Father was able to explain to the jury why the visits were missed. Father's ability or inability to attend scheduled visitation may also be relevant to the ISP directive that he create an environment to nurture and provide emotional stability for L.S., so that introduction of such evidence does not appear manifestly unreasonable that its admission would be fundamental error.

¶ 18 Father also contends the jury should not have heard D.H.S. criticism about his delay in signing a medical release for surgery the child needed in late 2011. Again, Father was able to testify that he was not avoiding the caseworker and the caseworker eventually reached him by phone and he provided the release, although D.H.S. claimed the surgery was delayed due to Father's inaccessibility. Father did not note an objection to this questioning and addressed the matter in his own testimony to counter the testimony of the caseworker. He has failed to show how introduction of this evidence was fundamental error.

¶ 19 Father's third example of improper evidence involves the portrayal of L.S. as a wonderful and engaging child. This too was not objected to by Father's counsel and Father has not demonstrated how he was prejudiced in its admission.

¶ 20 Father's fourth example contends the jury should not have been told an adoption placement was waiting for L.S., should Father's parental rights be terminated. However, it was Father's counsel who asked the question of the caseworker, "And you've already got someone in mind to adopt; is that correct?" Counsel for the State objected to this question, not Father. The trial court sustained the objection as "irrelevant." While the trial court ruled the adoption information irrelevant to Father's termination proceeding, Father has failed to show how the error was fundamental, especially in light of the fact he introduced the very evidence to which he now objects.

¶ 21 Father's next example of improper evidence involves references to the biological mother, whose parental rights to L.S. were terminated prior to Father's termination proceeding. The Father first mentioned the biological mother when he testified that he was not in contact with her and would not permit L.S. to have contact with the biological mother should he receive custody. The D.H.S. caseworker had expressed concern that Father was on the phone with the biological mother during a visitation with L.S., an allegation Father denied. In any event, Father was able to provide his testimony, denying he had contact with the mother, and expressed his willingness to refrain from contact with the biological mother. Father has failed to note where in the record he objected to this testimony and has not shown any error that might have occurred to be fundamental.

¶ 22 Father's final evidentiary example involves the caseworker's reference to numerous Budweiser items, such as frames, knickknacks, and an empty wine bottle under the sink. Father's counsel objected to this testimony on the basis of relevance. The trial court overruled his objection. The caseworker did not belabor the knickknacks, and Father's counsel was able to illicit her admission that beer logo figurines and frames do not make a parent unfit. The caseworker also testified that the wine bottle was not evidence of alcohol abuse. The state of the home and Father's prior substance abuse history were at issue in this case. Father has failed to demonstrate how admission of this evidence would warrant a new trial.

¶ 23 The order of the trial court, terminating Father's parental rights to L.S., is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.